UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN SONENBERG,<br><br>                                    Plaintiff,<br><br>v.<br><br>RBC CAPITAL MARKETS, LLC, et al.,<br><br>                                    Defendants. | Case No.: 25CV1642-JAH (JAC)<br><br>**ORDER GRANTING AND DENYING IN PART PLAINTIFF ERIN SONENBERG'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO RFPS NO. 3, 5, 7, 13, 14, 18, and 22**<br><br>**[ECF. No. 27, 31, and 32]** |

Currently before the Court is the Plaintiff's Motion to Compel Discovery, ECF No. 27 ("Mot."), Defendant's Opposition to Plaintiff's Motion to Compel Discovery, ECF No. 31 ("Opp'n"), and Plaintiff's Reply in Support of Motion to Compel Discovery, ECF No. 32 ("Reply"). For the reasons set forth below, Plaintiff's Motion to Compel further production of documents to Requests for Production of Documents ("RFP") Nos. 3, 5, 7, 13, 14, 18, and 22, is **GRANTED in part and DENIED in part.**

## I.    OVERVIEW AND FACTUAL AND PROCEDURAL BACKGROUND

This is an employment action where Plaintiff Erin Sonenberg ("Sonenberg" or "Plaintiff"), working as a Financial Advisor, claims that her supervisor Jake Dale ("Dale")

1

harassed and discriminated against her due to her pregnancy. ECF No. 5, at 4-6. Plaintiff further alleges that, after she reported Dale's behavior to RBC Capital Markets, LLC's ("RBC" or "Defendant") Employee Relations and the RBC Complex Director, Robin Long ("Long"), Dale continued to harass Sonenberg and eventually retaliated against her by removing Sonenberg from her previous position and placing her in a different, less lucrative position. *See id.* at 6-9. According to Sonenberg, this change in position and the hostile work environment, along with RBC's failure to prevent and protect Sonenberg from continued harassment, discrimination and retaliation, led to her resignation. *See id.* 9-10. The central issues of this case relate to (1) whether Dale did in fact harass and discriminate against Sonenberg based on her pregnancy; (2) whether Sonenberg's new position at RBC was the result of poor performance or retaliation; and (3) whether RBC took reasonable steps to address the alleged harassment, discrimination, and retaliation.

### A. Factual Background:

Given the complications throughout the meet and confer process and the failings of both sides to comply with their discovery obligations as set forth by the Federal Rules of Civil Procedure and the Court's Order Granting Stipulated Order Regarding Discovery and Electronically Stored Information Protocol, ECF No. 23 ("ESI Order"), the Court will outline the series of events that led to this current Motion.

On July 8, 2025, RBC served its RFPs on Plaintiff. Opp'n, at 2; Declaration of Michael W. Kopp ISO Opposition to Motion to Compel Discovery ("Kopp Decl."), ¶ 3. Three weeks later, on July 28, 2025, Sonenberg served her first set of RFPs on RBC. Kopp Decl., ¶ 3; *see also* Mot., Declaration of Byron Goldstein ISO Plaintiff's Motion to Compel Discovery ("Goldstein Decl."), ¶ 2. Both RBC and Sonenberg (the "Parties") entered into a series of extensions, extending Plaintiff's deadline for responses to August 30, 2025, and Defendant's deadline for responses to September 19, 2025. Opp'n, Kopp Decl., ¶¶ 4-5; *see also* Mot., Goldstein Decl., ¶ 3.

Discovery quickly derailed. On August 30, 2025, Sonenberg tendered RFP responses and produced non-responsive documents. Opp'n, Kopp Decl., ¶ 6. On

25cv1642-JAH (JAC)

September19, 2025, RBC served its written responses to Sonenberg's RFPs, but did not produce any documents. Mot., Goldstein Decl., ¶ 3. On September 24, 2025, the Parties met and conferred to address the issues each side had with the other's inadequate responses and document production. *See* Opp'n, Kopp Decl., ¶ 8; *see also* Opp'n, Exhibit ("Exh.") B; *see also* Mot., Goldstein Decl., ¶ 4; *see also* Mot., Exh. 3. During meet and confer, RBC stated it planned to provide proposed electronically stored information ("ESI") search terms by next week, and Sonenberg agreed to send edits to the ESI Agreement RBC drafted. Mot., Goldstein Decl., ¶ 4; Opp'n, Kopp Decl., ¶ 11. However, Defendant's counsel never saw those edits, Opp'n, Kopp Decl., ¶ 11, and RBC did not send Sonenberg ESI search terms within the week. *See* Mot., Goldstein Decl., ¶ 8.

On November 13, 2025, after documents had still not been produced, Sonenberg reached out to RBC to meet and confer, alerting RBC that if discovery was not produced soon, Sonenberg would need to go forward with filing a motion to compel "given the circumstances, including the litigation schedule." *See* Mot., Exh. 5. RBC agreed, and the Parties met and conferred on November 20, 2025. Opp'n, Kopp Decl., ¶ 11; Mot., Goldstein Decl., ¶ 7.

An hour and a half before the scheduled meet and confer, and two months after RBC said they would provide proposed ESI search terms to Sonenberg, Defendant's counsel sent a meet and confer letter that identified RBC's ESI search terms and custodians, as well as identifying which RFPs Defendant would amend and supplement. Mot., Goldstein Decl., ¶ 8; Opp'n, Exh. C. During the meet and confer, it was revealed that RBC's "ESI search . . . yield[ed] 721 documents," and that they were not privileged, but that Sonenberg's request was overbroad and RBC "did not see a basis" for producing all communications. Opp'n, Exh. C; *see also* Mot., Goldstein Decl., ¶ 7(b); *see also* Mot., Exh. 6. Defendant's counsel also sought to negotiate ESI search terms during the meet and confer, but Plaintiff's counsel refused, stating such negotiations would "take a significant amount of time" and that Defendant's refusal "to engage in a productive [discovery] exchange" over the past few months meant negotiations would be "too difficult" to carry on now. Mot., Goldstein

25cv1642-JAH (JAC)

Decl., ¶ 8. Defendant thus began using its proposed ESI search terms to begin searching for responsive records. *Id.* RBC committed to provide amended responses by December 30, 2025, and complete discovery by January 12, 2026. *See* Mot., Goldstein Decl., ¶¶ 8-9; *see also* Dkt. 17 at 2. However, RBC failed to provide Sonenberg amended responses by December 30, 2025. Mot., Goldstein Decl., ¶ 9. At or around the same time, RBC and Sonenberg reached an impasse regarding the terms of their ESI and clawback agreements. *See* Opp'n, ¶ 12, 14; *see also* Opp'n, Exh. D.

On January 15, 2026, the Parties participated in a chambers conference to address their various disputes and impasses. *See* Mot., Goldstein Decl., ¶¶ 9-12; *see also* Opp'n, Kopp Decl., ¶¶ 14-15; *see also* Opp'n, Exh. D. A few days before the chambers conference, Defendant began ESI production on January 12, 2026. *See* Mot., Goldstein Decl., ¶¶ 12-13. Defendant provided additional ESI production on January 14, 2026. Opp'n, Kopp Decl., ¶ 16. Following the chambers conference, RBC served amended discovery responses on January 16, 2026, and then produced further additional discovery on February 6, 2026. Mot., Goldstein Decl., ¶ 13; Opp'n, Kopp Decl. ¶ 16.

Sonenberg scheduled a deposition for Robin Long on April 2, 2026. *See* Mot., Goldstein Decl., ¶ 14; *see also* Opp'n, at 12. On April 1, 2026, a day before Ms. Long's deposition, RBC produced more documents, some of which were responsive documents with facts key to Sonenberg's claims. Mot., at 4; *see also* Mot., Goldstein Decl., ¶ 18 (one document "contained the actual findings of policy violations against Jake Dale and documents reflecting human resources' conversations regarding Sonenberg's complaints.").

Still dissatisfied and still believing that RBC was withholding responsive documents, Sonenberg filed this current Motion to Compel,[1] seeking production of

---

[1] RBC points out that Sonenberg filed her Motion to Compel 49 minutes late and argues that the untimeliness of Sonenberg's motion to compel warrants the complete denial of the motion. Opp'n, at 1; *see also Correa v. Braudrick*, No. 19-cv-00369-ADA-BAK (GSA) 2022 WL 3704216, at *1 (E.D. Cal, Aug. 26, 2022). However, RBC's one and only case citation refutes their own argument, stating that that courts "must review 'the circumstances specific to each case'" when determining the timeliness of a

additional, responsive documents to RFPs 3, 5, 7, 13, 14, 18, and 22, as well as asking the Court to find that RBC waived any and all objections based on privilege because RBC had not yet served a privilege log at the time of the Motion. *See* Mot. Before filing this Motion, Sonenberg did not meet and confer with RBC about its intent to seek waiver of attorney client privilege. Opp'n, at 11-12.  RBC then produced its privilege log in May 2025 shortly thereafter. *See* Reply, Goldstein Decl., ¶ 5.

## II.    LEGAL STANDARD

The scope of discovery, as outlined by Federal Rule of Civil Procedure 26(b), is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P.26(b)(1).

District courts are granted "broad discretion to determine relevancy for discovery purposes." *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 15cv1879-BEN (BLM) 2016 WL 6522807 at *2 (S.D. Cal. June 25, 2024) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)); *see also Albertson's LLC v. Amazon Retail LLC*, No. C23-1982-JCC-MLP 2024 WL 5657657, at *4 (W.D. Wash. Jan. 5, 2024) ("Relevancy, particularly in discovery, 'is a relatively low bar.'") (internal citation omitted). However, courts are

---

motion. *Correa*, 2022 WL 3704216 at *2. The fact that Sonenberg's motion was filed a mere 49 minutes late, and the fact that some of that delay may be attributable to RBC's own conduct during discovery, leads the Court to conclude that the minor delay does not justify denial of Sonenberg's motion based on untimeliness.

required to limit the extent or frequency of discovery if the Court determines the sought-after discovery is "unreasonably cumulative or duplicative[;]" can be obtained from another more convenient, less burdensome, or less expensive, source;  if the moving party had "ample opportunity to obtain the information by discovery in the action;" or if the discovery is outside Rule 26(b)(1)'s permitted scope. *See* Fed. R. Civ. P. 26(b)(2).

Pursuant to Federal Rule of Civil Procedure 34, "[a] party may request the production of any document within the scope of Rule 26(b)." *Price v. Synapse Grp., Inc.*, No. 16cv1524-BAS(BLM) 2018 U.S. Dist. LEXIS 155637, at *4 (S.D. Cal. Sept. 12, 2018) (citing Fed. R. Civ. P. 34(a)). The responding party has two options: they can, "[f]or each item or category, . . . state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Any and all objections must state if responsive documents are being withheld on that basis. *Id.* at 34(b)(2)(C). Further, all documents within the "possession custody, or control" of the responding party are the responsibility of the responding party. *FlowRider Surf, Ltd.*, 2016 WL 6522807 at *2 (citing Fed. R. Civ. P. 34(a)(1)). Notably, "[a]ctual possession, custody or control is not required. Rather, 'a party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document.'" *Id.* (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995)).

Pursuant to Federal Rule of Civil Procedure 37(a)(3)(B), a party may move to compel production of documents if "a party fails to produce documents . . . as requested under Rule 34." Compelling discovery under Rule 37 has two threshold tests. First, the burden rests on the party seeking to compel discovery to establish "'that its request[s] satisf[y] the relevancy requirements of Rule 26(b)(1).'" *Williams v. County of San Diego*, No. 17cv815-MMA (JLB) 2019 WL 2330227, at *3 (S.D. Cal. My 31, 2019) (quoting *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009). Once the party making the motion meets this threshold, the burden shifts to the party

25cv1642-JAH (JAC)

opposing discovery to show why "the discovery should be prohibited" as well as the additional burden of "clarifying, explaining, or supporting its objections." *Id.* The party opposing discovery "'carr[ies] a heavy burden' of showing why discovery should be denied." *Williams*, 2019 WL 2330227 at *3 (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

## III.    DISCUSSION

Sonenberg asks the Court to compel RBC to produce additional documents in response to RFPs No. 3, 5, 7, 13, 14, 18, and 22 and to find that RBC waived attorney-client privilege by failing to timely object and provide a privilege log. First, the Court will address RBC's argument raised for RFPs No. 3, 5, 7, and 18 that their use of ESI search terms and Sonenberg's failure to object to or provide additional ESI search terms means RBC has complied with its discovery obligations. Second, the Court will address the remaining arguments RBC asserts against all of Sonenberg's RFPs individually. Third, the Court will address both Parties' failure to effectively and professionally meet and confer, as well as RBC's untimely-produced privilege log.

### A. RBC's ESI Search Terms and Sonenberg's Failure to Object.

In RBC's Opposition, RBC argues that it has already produced all relevant documents found by ESI search terms responsive to RFPs No. 3, 5, 7, and 18. RBC argues that because Sonenberg never objected or proposed any modifications to the proposed ESI search terms set out in RBC's November 20, 2025, email, Sonenberg fails to identify any actual deficiency in RBC's production. Opp'n, at 4-5, 6, and 10.

RBC misconstrues its obligations under Rule 34. No portion of Rule 34 relieves a party from producing responsive documents in discovery because another party fails to object or negotiate ESI search terms. *See* Fed. R. Civ. P. 34. Further, "electronic discovery is generally subject to the same discovery requirements as other relevant information," *NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 18cv347-CAB-MDD, 2019 WL 4934477, at *2 (S.D. Cal. Oct. 7, 2019) (citing *The Sedona Principles*, Third Edition, 19 SEDONA CONF. J. 1 (2018)), and as other courts in this district have noted, utilizing ESI search

25cv1642-JAH (JAC)

terms "does not relieve [the] defendant of its independent obligation to determine the custodians most likely to possess responsive documents and use 'reasonably diligence to look for them.'" *Custom Foods of America, Inc. v. California Garlic Company, Inc.*, No. 24cv575-LL-DDL, 2024 WL 5036652, at *2 (S.D. Cal. Nov. 8, 2024) (quoting *Davis v. Pinterest, Inc.*, No. 19cv7650-HSG (TSH) 2021 WL 3045878, at *3 (N.D. Cal. July 20, 2021)), *reconsideration denied*, No. 24cv575-LL-DDL, 20205 WL 875918 (S.D. Cal. Jan. 17, 2025).

While "[g]enerally, a party's failure to serve timely objections to document production *requests* constitutes a waiver of any objections the party might have to the *requests*," *Young v. U.S.*, 149 F.R.D. 199, 206 (S.D. Cal., 1993) (emphasis added), this Court has found no case law suggesting that a party's failure to object to or propose ESI search terms constitutes a waiver of that party's ability to later compel discovery of responsive documents. If RBC wanted such a rule, they could have negotiated or included such a provision in their Joint Motion for ESI Protocol. *See Martinelli v. Johnson & Johnson*, 15cv17333-MCE-EFB 2016 WL 1458109, at *4 (E.D. Cal. Apr. 13, 2016) (Order adopting ESI provision that states "[a] party's failure to meet and confer or to make a timely request for different or additional searches [to ESI search terms] shall waive that party's right to object to the sufficiency of the searches actually conducted."). However, RBC did not do so. *See* ECF No. 22-23. The Court does not find, as a blanket matter, that Sonenberg has waived her ability to seek to compel further production of responsive documents based solely on the failure to object to RBC's proposed ESI search terms.

### B.    Individual RFPs.

Having addressed RBC's overriding argument regarding ESI search terms, the Court will address the individual RFP responses. Sonenberg asks the Court to compel RBC to produce additional documents in response to RFPs No. 3, 5, 7, 13, 14, 18, and 22.

#### 1. RFP No. 3

Sonenberg's RFP No. 3 requests the following:

All documents relating to any complaints by Sonenberg concerning Jake Dale,

related investigations, any related findings, proposed findings, proposed responses, considered responses, or responses to any such complaint, finding, or investigation.

Mot., Goldstein Decl., Exh. 1 at 8. Sonenberg argues that RBC's responses are inadequate because, while RBC has produced *some* documents, RBC has not produced all the documents responsive to their discovery request. *See* Mot., at 7-9. Sonenberg states that its request for these documents is relevant because evidence of RBC's investigations, what RBC knew and how RBC responded goes to whether RBC took reasonable steps to address Dale's alleged harassment of Sonenberg and if Dale's alleged harassment, discrimination, and Sonenberg's change in job position were related to her pregnancy. Mot., at 7-8.

The Court agrees that Sonenberg's discovery request relating to any complaints Sonenberg filed against Jake Dale, and any possible investigations, findings, or responses by RBC are relevant to this case and discoverable. The more difficult question is whether all responsive documents have been produced. RBC asserts that (1) that no other responsive documents exist; and (2) any additional discovery that has not been produced was not requested by the RFP's language. *See* Opp'n, 4-5. But in her Motion, Sonenberg provided explicit, tangible examples of documents responsive to the aforementioned request that were not and have not been produced by RBC. *See* Mot., Exh. 10, Long Dep. 127:10-128:9 (discussing, in relevant part, that Ms. Long received a second draft of the written warning provided to Dale; the first draft of this warning has not been produced); Long Dep. 149:4-17 (describing that Amy Alarie took notes of the mediation between Sonenberg and RBC, but that Ms. Long never received them; these notes have not been produced.). This is not speculation, as RBC claims; rather, this is evidence that RBC either has responsive documents it has not produced or had responsive documents that it no longer possesses. These documents are responsive to Sonenberg's request and are the sole responsibility of RBC to maintain and produce. *See FlowRider Surf, Ltd.*, 2016 WL 6522807 at *2 (citing Fed. R. Civ. P. 34(a)(1)). RBC must make a further diligent search and either produce responsive documents or make a "verified statement" that RBC no longer has possession,

25cv1642-JAH (JAC)

custody, or control of these responsive documents. *See Hullinger v. Anand*, No. CV 15-7185 SJO (FFMx) 2016 WL 3475611, at \*1 (C.D. Cal. Mar. 14, 2016) (Order granting Plaintiff's Motion to Compel where the court required responding parties to provide a verified statement that either they do not have possession, custody, or control of responsive documents or that they already produced such documents.); *see also Garcia v. Chandra*, No. 22-cv-1221 TLN CSK P 2025 WL 1569638, at \*4, *slip copy* (E.D. Cal. June 3, 2025) ("If defendant is unable to locate the responsive document, defendant shall file a discovery response describing the failed efforts to locate the document.").

Another category of documents that Sonenberg seeks to compel in response to RFP No. 3 are documents evidencing or recording Dale's complaint against Sonenberg, submitted shortly after Sonenberg made a complaint of harassment, as well as RBC's response to Dale's complaint. RBC argues that such documents are not within the scope of RFP No. 3 because the RFP only requests documents "relating to 'complaints by *Erin Sonenberg* concerning Jake Dale.'" Opp'n, at 5 (emphasis included in original). But Sonenberg's Request for Production defines the term "relating to" as "analyzing, commenting upon, constituting, dealing with, defining, describing, discussing, concerning, containing, evidencing, embodying, reflecting, identifying, involving, listing, mentioning, referring to, responding to, stating, or in any way pertaining to." Mot., Goldstein Decl., Exh. 1.

Notably, RBC did not object to this definition of the term "relating to" in either their initial response or their supplemental response to Sonenberg's requests for production. *See* Mot., Goldstein Decl., Exh. 2, at 2-3; *see also* Mot., Goldstein Decl., Exh. 7, at 2-3. By the definitions that RBC agreed to, Dale's complaint against Sonenberg, which he filed after RBC found Dale did in fact violate its anti-discrimination policies, would in fact "relate to" the complaints filed by Erin Sonenberg.

For the foregoing reasons, Sonenberg's Motion to Compel further production of documents responsive to RFP No. 3 is **GRANTED**. RBC must make a further diligent search and produce responsive documents or verify in writing that responsive records are

no longer within its possession, custody, or control.

2.    RFP Nos. 5 & 7

Sonenberg's RFP No. 5 and No. 7 request the following:

5.    All documents relating to the decision that Sonenberg would no longer work with the Dale Group. This includes any such documents sent by, sent to, created by, or modified by Jake Dale, Beth Dale, Robin Long, Amy Alarie, Pat Vaughn, or Megan Schulist.

7.    All documents relating to the decision that Sonenberg would be in a Solo Financial Advisory position, including any other options considered.

Mot., Exh. 1, at 8-9.

Sonenberg argues that these requests are relevant because there is a dispute of fact as to whether Sonenberg's change in position was a result of Dale's retaliation or because there was a legitimate explanation as to why RBC decided Sonenberg would no longer work with the Dale Group. Mot., Exh. 9, at 4 (In RBC's response to interrogatory number two, RBC gives several reasons for the change in Sonenberg's position, including, "Plaintiff's compensation demands relative to her lack of contributions to the team and client origination," her "expressed interest in seeking positions outside of the Dale Group," and that she "previously made clear that she was uncomfortable representing the Dale Group. . .") Sonenberg argues that production of these documents would go to show whether RBC did in fact remove Sonenberg for the aforementioned legitimate reasons, or if she was removed because she had levied harassment and discrimination complaints against Dale. Sonenberg further argues that these requests are relevant to show that RBC was dishonest regarding its reasons for removing Sonenberg from the Dale Group. Mot., at 10. Again, the Court agrees the requested documents are relevant to Plaintiff's claims – the question is whether all responsive records have been produced.

Unlike the response to RFP No. 3, Sonenberg has not demonstrated there are additional records responsive to RFP Nos. 5 and 7. RBC searched electronic records belonging to the individuals identified in RFP No. 5, for the entire period in which

responsive records would have been created. Sonenberg has not identified any additional locations, custodians, or search terms which could be used by RBC to locate additional responsive documents and has not identified any particular documents which she believes have not been produced. Based thereon, Sonenberg's Motion to Compel further production of documents responsive to RFP Nos. 5 and 7 is **DENIED.**

### 3.  RFP No. 13

Sonenberg's RFP No. 13 requests the following:

Documents sufficient to show Defendant's policies or guidelines regarding workplace complaints, including investigations and responses, discrimination, maternity leave, any other type of authorized leave (e.g., disability and military), reinstatement following a leave, and requests for accommodations.

Mot., Exh. 1, at 10.

Sonenberg argues that this request is relevant because evidence of RBC's procedures and actual investigations into complaints from employees demonstrates whether RBC actually failed to "adequately investigate" Sonenberg's complaints. *See* Mot., at 11. Sonenberg also argues that evidence of either RBC's action or inaction in responding to Sonenberg's complaints in comparison to RBC's own policies and guidelines could establish liability for RBC's failure to take reasonable steps to prevent workplace harassment and discrimination. *See id.*

The Court finds Sonenberg's discovery request seeking documents of RBC's policies and guidelines regarding workplace complaints is relevant to this case. Sonenberg alleges that RBC had policies in place, but that RBC failed to adequately investigate her complaints. *See id.* Thus, evidence of RBC's policies, alongside the actual investigations RBC performed—as the RFP clearly includes—are relevant to establish whether RBC did in fact follow their workplace policies and guidelines. Evidence of RBC's diligent adherence to its policies or its failure to do so would be relevant to either bolster or refute Sonenberg's failure to take reasonable steps claim.

RBC argues (1) that Sonenberg does not actually identify any missing documents; and (2) that "standard training" for employees conducting investigations is not relevant because RBC has already produced the actual policies for investigations. Opp'n, at 8. RBC's second argument betrays its first. RBC states in its Opposition that Sonenberg failed to identify why training employees received on how to investigate possible complaints of workplace harassment or discrimination is relevant to Sonenberg's workplace discrimination and harassment claim. *See id.* Sonenberg responds by stating that this is "the first time" RBC revealed that it had such training materials and that RBC withheld them. Reply, at 8.

By its own papers, RBC admits that responsive documents were withheld without being identified in accordance with Rule 34. Fed. R. Civ. P. 34(b)(2)(B) ("for each item or category, the response must either state that inspection . . . [or production] will be permitted as requested or state with specificity the grounds for objecting to the request. . ."); *see also id.* at 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). During this entire dispute, it appears RBC has failed  to identify that standard training actually exists or to object to Sonenberg's RFP on relevancy grounds *until this current motion*.

Further, these trainings are relevant. Evidence of the actual training that RBC employees received on how to investigate workplace complaints regarding harassment and discrimination, when coupled with RBC's actual actions in investigating Sonenberg's complaint, is indicative of whether RBC took reasonable steps to protect and prevent harassment and discrimination.

However, with regards to any other forms, investigations, or documents that RBC may have relating to RBC's policies or guidelines, including investigations in pursuit of those policies, RBC contends, and Sonenberg has no evidence that, these documents in fact exist. Sonenberg cites RBC's Complaint Process, Reply, Exh. 7 at DEF_001336, but without more, the Court cannot determine whether RBC created additional documents or

13

communications that have not been produced in attempting to investigate Sonenberg's complaints. However, given Sonenberg's upcoming depositions, if it comes to light that there were additional documents or communications RBC created in pursuit of its complaint process, policies, or guidelines that RBC failed to produce, Sonenberg can renew meet and confer efforts with RBC for production of such documents.

For the foregoing reasons, Sonenberg's motion to compel production of documents relating to training employees how to conduct investigations into workplace complaints is **GRANTED**. With regards to any other forms, investigations, or documents that RBC may have relating to RBC's policies or guidelines, including investigations in pursuit of those policies relating to Sonenberg, Sonenberg's motion is **DENIED.**

### 4. RFP No. 14

Sonenberg's RFP No. 14 requests the following:

Documents sufficient to show Defendant's policies or guidelines regarding Teams. This includes the formation of Teams, the departure of a member of a Team, and Team disputes. It also includes a Team's role or authority concerning hiring, terminating, disciplining, or compensating members of a Team.

Mot., Exh. 1, at 10.

Sonenberg argues that this request is relevant because it goes to either refute or prove RBC's argument that RBC did not remove Erin Sonenberg from The Dale Group because "The Dale Group Team Agreement was terminated pursuant to the terms of an October 2021 Team Agreement. . . .'" Mot., Exh. 9 at 3. The Court agrees. RBC's core argument against Sonenberg's retaliation claim is that Sonenberg was switched to a Solo Financial Advisor because the Team Agreement was automatically terminated when a former member of the Dale Group, Chase Rosenberg ("Rosenberg"), left RBC while Sonenberg was out on leave due to her pregnancy. *See* Opp'n, at 7, n. 2; *see also* Opp'n at 8. Documents showing the policies and guidelines surrounding how Teams are formed and what happens when a team member departs are relevant to refute this defense.

RBC argues that (1) it has already produced the Team Agreement in discovery; and (2) that "any other documents or resources regarding the various considerations in how Financial Advisors *might* form teams are not relevant . . . [because] it is the actual, signed Team Agreement that governs the parties' Team relationship." Opp'n, at 8-9 (emphasis included in original). Specifically, RBC argues that the automatic termination of the Team Agreement, which occurred when Rosenberg left RBC, governs the relationship between Sonenberg and her status as a member of The Dale Group. *See* Opp'n, at 7, n. 2; *see also id.* at 8-9. Therefore, it appears that RBC's argument is that, once the Team Agreement terminated back in 2022, Sonenberg was automatically terminated from The Dale Group. Sonenberg responds that the record refutes this because Sonenberg states in an email sent to Ms. Long on May 14, 2024, that RBC recently removed her from The Dale Group. *See* Reply, Exh. 6 at DEF_001984.

RBC's production of only the Team Agreement narrows the request beyond its plain language. The request explicitly includes documents about "the formation of Teams" and what happens when a Team member departs. Mot., Exh. 1, at 10. Further, based on the record, there appears to be a question of fact as to whether RBC did, in fact, terminate Sonenberg from The Dale Group in 2024 (in line with Sonenberg's May 14, 2024 email) or if she was automatically terminated when Rosenberg left in 2022. *See* Opp'n, at 7, n. 2; *see also id.* at 8-9; *but see* Reply, Exh. 6 at DEF_001984.

However, and more pointedly, Long's deposition reveals that there are other documents that explain the process of setting up a Team. Mot., Exh. 10, Long Dep. 104:4-13 (naming, among "several [other requirements,"] that a "joint production agreement is one of the first documents that [is] filled out" when forming a Team); *id.* at 105:11-15 ("Q. . . . I asked if there were requirements for forming a team. You said yes. And then said what are those. You said one of them is to form a joint production agreement. A. Yes, that's accurate."). This demonstrates, at the very least, other documents go into the formation and disbandment of Teams other than merely the Team Agreement. Because Sonenberg's request sought all documents, "includ[ing] the formation of Teams," RBC is required to

produce all documents responsive to this request. RBC has not done so.

For the foregoing reasons, Sonenberg's Motion to Compel further production of documents responsive to RFP No. 14 is **GRANTED**. RBC shall search for and produce additional responsive records as described herein.

5. <u>RFP No. 18</u>

Sonenberg's RFP No. 18 requests the following:

All communications involving Jake Dale and Erin Sonenberg from March 1, 2023 through May 14, 2024.

Mot., Exh. 1, at 10.

At the outset, RBC has disclosed that it collected 721 responsive documents to this request. *See* Mot., Goldstein Decl., ¶ 20. Sonenberg claims that she has only received 155 documents at most. Mot., at 7.

Sonenberg makes four arguments as to why all 721 responsive communications should be produced. First, she argues that every communication between herself and Dale is relevant because it can "establish[] the pattern, severity, and pervasiveness of the alleged harassment and retaliation." *Id.*, at 13. Second, she argues that all these communications are probative of Dale's "state of mind" when the alleged harassment and discrimination occurred. *Id.* Third, Sonenberg claims that all these communications are needed to track the evolution of Dale's communications with Sonenberg, from before Sonenberg disclosed her pregnancy until she was removed from The Dale Group. *See id.*, at 13-14. Fourth, Sonenberg argues that all these communications go to the credibility of "each party's contentions about Dale's behavior." *Id.* at 14.

The communications between Sonenberg and Dale are relevant to Sonenberg's claim that Dale harassed, discriminated, and retaliated against her because of her pregnancy. Specifically, evidence demonstrating how Dale and Sonenberg communicated before she told Dale of her pregnancy are relevant because they serve as the control for Dale's behavior toward Sonenberg before his alleged discriminatory conduct. Additionally, as Sonenberg points out, tracking the evolution of Sonenberg and Dale's communications

25cv1642-JAH (JAC)

throughout the duration of this matter can be relevant to show the persistence of Dale's alleged improper conduct, as well as RBC's failure to take reasonable steps if he in fact persisted in seeking to discriminate and retaliate against Sonenberg. Therefore, Sonenberg has established that all of these communications from March 1, 2023, through May 14, 2024, are relevant.

RBC's argument boils down to three points—production of all 721 communications (a) is not relevant; (b) butts up against RBC's regulatory obligation to protect confidential information; and (c) is not proportional to the needs of the case. *See* Opp'n, at 9-10. First, RBC asserts that all these communications are not relevant but does not establish or argue why such communications are not relevant. Instead, RBC blankets this argument by stating that "requiring the production of *every* communication . . . is – on its face – not relevant to the claims or defenses of either party. . . ." Opp'n, at 10. Without more, the Court cannot just accept RBC's argument, and thus RBC has failed to meet its burden to clarify and explain why production of these documents should be prohibited. *See Williams*, 2019 WL 2330227 at *3.

Second, RBC's confidentiality argument may be earnest, albeit misplaced. Any concerns RBC may have about client information becoming public are covered by the Protective Order already in place. *See* Dkt. 13, Dkt. 14. If RBC believes the Protective Order is not sufficiently inclusive, it can seek an additional one. Additionally, RBC has in the past identified that the 721 communications or documents responsive to Sonenberg's RFP No. 18 are not privileged. Mot., Exh. 6, at 4. Thus, RBC has no real reason to claim that these documents are inaccessible or should not otherwise be produced, as their own previous identifications to Sonenberg that these communications are not privileged undercuts any current privilege objections. Thus, the documents that RBC has previously identified as both responsive and not privileged should be quite accessible to RBC and should be produced.

Third, RBC argues that producing an additional 550 or so communications is not proportional to the needs of this case. Opp'n, at 10. The Court disagrees. First, the

production of 550 additional documents that RBC has already identified is not the massive undertaking RBC appears to characterize. As Sonenberg notes, courts often find that the production of all documents is proper when the request is limited by both the request's scope and subject. *See Hipschman v. County of San Diego*, 738 F.Supp.3d 1332, 1343-1344 (S.D. Cal. 2024) (After modifying the scope and subject of the request to make it proper and proportional, ordering the County "to produce all documents" in line with that request.). Additionally, the type of case or number of plaintiffs does not per se show that 550 additional documents is disproportionate. Yes, this is a single Plaintiff employment case but arbitrarily tying what a party thinks ought to be a proportionate number of documents produced to the case type or number of parties does not necessarily reflect what is a proportionate amount of discovery. An additional 550 documents that RBC has already identified and located should provide no issue for RBC to produce, especially not an issue of such magnitude as to deny production of responsive, relevant, discovery.

For the foregoing reasons, Sonenberg's Motion to Compel further production of documents responsive to RFP No. 18 is **GRANTED**.

### 6. RFP No. 22

Sonenberg's RFP No. 22 requests the following:

Documents sufficient to show the job responsibilities for the positions held by the following people, including any applicable job descriptions: Erin Sonenberg, Jake Dale, Beth Dale, Robin Long, Amy Alarie, Pat Vaughn, and Megan Schulist.

Mot., Exh. 1, at 11.

Sonenberg argues that this request is relevant because there is an actual dispute about whether Dale is a supervisor, Mot., at 14, because Dale claimed that Sonenberg was not meeting her job requirements, *Id.*, and because these documents would show the responsibilities of senior managers and human resources employees who were involved in investigating and responding to Sonenberg's complaints against Dale. *See id.*

There is a factual dispute between whether Dale was in fact Sonenberg's supervisor.

18

*See* Mot., at 14; *but see* Opp'n, at 11. This alone is sufficient to show that this discovery request is relevant, as only documents can resolve the actual job descriptions and responsibilities, not attorney arguments on pleading paper. Additionally, documents showing the responsibilities of those who were senior managers and human resources employees that Sonenberg interacted with and engaged with throughout the complaint process at RBC are relevant to determine whether RBC failed to take reasonable steps in preventing discrimination or retaliation.

RBC argues that (1) it does not need to produce documents showing Jake Dale's and Beth Dale's positions because they were the same position as Sonenberg; and (2) RBC does not need to produce any documents relating to Pat Vaughn's role because Sonenberg does not identify Pat Vaughn as having any role or connection to Sonenberg's allegations, and therefore the documents are not relevant.

RBC's first argument has no merit. Whether Jake Dale and Beth Dale did, in fact, have the same positions as Sonenberg can only be shown through document production. RBC may claim that Sonenberg, Jake Dale, and Beth Dale are all in the same position, but RBC has produced evidence pointing to the contrary. *See* Reply, Exh. 8 (Exhibit showing Jake Dale labeled as a "Senior Vice President."). If RBC claims this is incorrect, they are welcome to argue it. However, until documents refute or corroborate that fact, RBC's argument remains just that—an argument, and mere argument is an insufficient reason to prohibit compelling or producing documents in discovery.

RBC's second argument regarding the relevance of Pat Vaughn's job responsibilities is also not supported by the record. Sonenberg has shown at least one document that shows Ms. Long consulted Pat Vaughn at least once during Sonenberg's complaint process. *See* Reply, Exh. 9. Further, RBC's own Search Term Protocol identifies Pat Vaughn as a custodian six times. *See* Opp'n, Exh. C. Whatever Pat Vaughn's role in this matter, the fact that Pat Vaughn has been involved in complaint conversations and is listed as a custodian of several documents demonstrates that these records are relevant to Sonenberg's claims and should be produced.

For the foregoing reasons, Sonenberg's Motion to Compel further production of documents responsive to RFP No. 22 is **GRANTED in part and DENIED in part**.

### C. <u>Waiver of Privilege</u>

In a single sentence, Sonenberg asks the Court to find that RBC has waived all attorney-client privilege objections because RBC served only "boilerplate objections" and failed to "serve a privilege log within 60 days under the Joint Discovery Plan." *See* Mot., at 1. RBC counters by arguing (i) that Sonenberg never met and conferred regarding RBC's waiver of privilege, (ii) that the Joint Discovery Plan does not expressly provide for waiver of privilege due to the failure to provide a privilege log, (iii) that the ESI clawback agreement negotiated by both sides states that privileged material remains privileged even after they are produced, and (iv) that under Sonenberg's reasoning, Sonenberg also waived privilege because she did not provide a privilege log within 60 days of her production of documents. *See* Opp'n, at 11-12.

Failure to provide a privilege log is not a per se waiver of attorney-client privilege. *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Instead, a court determines whether privilege has been waived on a "case-by-case determination," weighing (a) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged[;]" (b) "the timeliness of the objection and accompanying information about the withheld documents[;]" (c) "the magnitude of the document production[;]" and (d) "other particular circumstances of the litigation that make responding to discovery unusually easy or unusually hard." *Id.* These factors are not to be applied mechanistically but rather should "applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." *Id.*

Taking these factors into account, the Court concludes RBC has not waived its attorney-client privilege. First, if privilege were to be waived, Sonenberg would receive communications "regarding Erin Sonenberg[,]" sent between RBC and a Dustin Massie,

25cv1642-JAH (JAC)

identified in the log as "Senior Counsel, U.S. Employment Law." *See* Reply, Exh. 3. Such communications are core attorney-client privileged materials.

Second, the Court finds issue with Sonenberg's failure to meet and confer regarding her intent to seek full-scale waiver of attorney-client privilege. RBC objected on the basis of privilege across both its first and amended responses to Sonenberg's RFPs several times. *see* Mot., Exh. 2; *see also id.* at Exh. 5. Despite this, Sonenberg never raised RBC's failure to produce a privilege log with RBC until the eve of this Motion. *See* Opp'n, at 11-12. Surely, if Sonenberg took issue with RBC's failure to produce a privilege log as consequential enough to seek waiver of RBC's attorney-client privilege, Sonenberg would have brought this issue to RBC's attention during its numerous meet and confer letters, emails, and phone calls, or raised the issue at the Chambers Conference in back January, 2025. As the Ninth Circuit made clear, however, courts should be wary of attempts by counsel to use waiver of privilege as "tactical manipulation of the rules and the discovery process" and possible gamesmanship. *Burlington*, 408 F.3d at 1149.

It is true that RBC's privilege log was untimely, under either Rule 34 or the negotiated terms of the Parties' Joint Motion, and that this may have frustrated part of the discovery process. However, the circumstances surrounding this litigation demonstrate an apparent attempt by both sides to frustrate the discovery process. Opp'n, Kopp Decl., ¶ 16; *see also* Mot., Goldstein Decl., ¶ 18; (alleging that RBC produced documents the "the afternoon before" Ms. Long's deposition.); *see also* Mot., Goldstein Decl., ¶ 8; (RBC did not propose ESI search terms "until about 1.5 hours before the November 20, 2025 [meet and confer] call."); *see also* Mot., Goldstein Decl., ¶¶ 10-13 (showing RBC began its ESI production on January 12, 2026, just three days before its discovery conference with Judge Major's Chambers that Sonenberg requested on January 5, 2026.); *see also* Mot., Goldstein Decl., ¶ 8 (explaining that "it was difficult to now engage in a negotiation of [ESI] search terms," and thus, elected not to do so.); *see also* Opp'n, Kopp Decl., ¶¶ 4-9 (showing that Sonenberg did not produce documents in accordance with the Parties' agreed-upon extended discovery deadline.); *see also* Opp'n, Kopp Decl., ¶ 8 (Sonenberg sending

questions regarding RBC's discovery responses "less than 30 minutes" before the Parties were to meet and confer.). Additionally, if an untimely privilege log were sufficient to constitute waiver of privilege, then there is at least an argument that Sonenberg's *own failure* to provide a timely privilege log should likewise waive any of Sonenberg's claims to withhold documents based on privilege. Opp'n, Kopp Decl., ¶ 18. In any event, finding waiver of *either* Parties' ability to claim attorney-client privilege—one of the harsher waivers a court can find—in a case where both Parties have not been exactly forthcoming in discovery efforts would be improper at this time. Sonenberg's Motion to Compel on that basis is **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel production of documents responsive to RFPs No. 3, 5, 7, 13, 14, 18, and 22 is **GRANTED IN PART AND DENIED IN PART.** RBC is ordered to search for and produce the additional responsive documents required pursuant to this order by June 19, 2026.

**IT IS SO ORDERED**.

Dated:  June 4, 2026

Hon. Janet A. Cabral
United States Magistrate Judge

25cv1642-JAH (JAC)